**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

                                **Case No. 2:07-cr-213**
          **Plaintiff,**                 **JUDGE EDMUND A. SARGUS, JR.**

     **v.**

**SEAN W. BECK,**

          **Defendant.**

**<u>OPINION AND ORDER</u>**

     This matter is before the Court on Defendant Sean W. Beck's pro se motion for a sentence modification under 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 119.)  The Government opposes Defendant's motion.  (ECF No. 120.)  For the following reasons, the Court **GRANTS** Defendant's motion.

**I.**

     On October 25, 2007, Defendant was charged in an indictment with three drug trafficking counts, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c), (b)(1)(B)(ii), and 846, and three counts of possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (ECF No. 17.)  Defendant appeared before the undersigned on May 22, 2008 and pleaded guilty to one count of conspiracy with intent to distribute more than 500 grams of cocaine and one count of armed drug trafficking. (ECF No. 46.)   On July 30, 2009, this Court sentenced Defendant to 180 months on the drug trafficking offense and 60 months on the § 924(c) offense, to be served consecutively for a total of 240 months.  (ECF No. 84.)  The Court also imposed a five-year term of supervised release.  (*Id.*)  Over five years later, on March 2, 2015, Defendant moved the Court

to reduce his sentence on his drug trafficking offense from 180 months to 144 months. (ECF No. 87.) Pursuant to Amendment 782 to the United States Sentencing Guidelines, this Court granted Defendant's motion on March 10, 2015 and reduced his sentence on the drug trafficking offense from 180 months to 144 months. (*Id.*)

According to Defendant, on October 1, 2020, the BOP placed him on home confinement to finish the remainder of his sentence. (ECF No. 119 at 1.) Defendant's term of incarceration will end on May 6, 2022.[1] Since being placed on home confinement, Defendant has obtained employment at UPS in Zanesville and Health Car Care in Newark, and works over 60 hours per week. (*Id.* at 8.) At UPS, Defendant works 30 hours per week as a pre-loader and receives healthcare and retirement benefits. (*Id.*) Defendant's supervisor recently asked if he would be interested in a promotion to full-time delivery driver to begin in August 2021. (*Id.*) The full-time position at UPS would give Defendant a seven dollar per hour raise with potential for yearly raises. (*Id.* at 8–11.) Obtaining a full-time position at UPS would also allow Defendant to quit his second job in Newark; he would no longer have to commute or work a second job. (*Id.*)

Defendant's case manager at the Alvis House informed him that she spoke to the BOP Regional Supervisor for Ohio and learned that the BOP does not permit inmates on home confinement to have delivery jobs, even though Defendant is on electronic monitoring. (*Id.* at 9.) The Government contends that this is not a categorical rule and that Defendant's request to become a delivery driver is still under consideration. (ECF No. 120 at 3.)

Defendant now moves the Court for a sentence modification pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 102.)[2] Defendant requests that the Court modify his sentence and start

---

[1] BOP, Sean W. Beck (accessed on July 12, 2021), https://www.bop.gov/inmateloc/.

[2] Defendant has twice moved for compassionate release citing the COVID-19 pandemic. (ECF Nos. 98, 104.) Defendant also moved for a sentence reduction under Section 403 of the First Step Act. (ECF No. 102.) The Court denied all three motions. (ECF Nos. 102, 115, 118.) The instant motion raises different

his five-year term of supervised release. (*Id.* at 20–21.) Starting the five-year term of supervised release would place Defendant under the supervision of the Probation Office instead of the BOP, which would give Defendant a better chance of being allowed to pursue the promotion to a full-time delivery driver. (*Id.*) Defendant claims that if he is not able to pursue the promotion by August, he will be passed up and that it may be a few years before he gets the opportunity again. (*Id.*)

## II.

Since Congress passed the Sentencing Reform Act of 1984, federal law has authorized courts to reduce the sentences of federal prisoners with extraordinary health concerns and other hardships, but only under very limited circumstances. *See United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020); *see also* Pub. L. No. 98–473, ch. II(D) § 3582(c)(1)(A), 98 Stat. 1837 (1984). Prior to the passage of the First Step Act of 2018, a district court could grant compassionate release sentence reductions only upon motion by the Director of the Bureau of Prisons ("BOP"). *See id.*

On December 21, 2018, Section 603(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, modified 18 U.S.C. § 3582(c)(1)(A) to allow a sentencing court to reduce an imposed sentence. The statute provides:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendants' facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

grounds for a sentence modification based on new circumstances that developed after those motions were denied.

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

As the Court of Appeals explained in *Ruffin*, the statute contains "three substantive requirements for granting relief." *Ruffin*, 978 F.3d at 1004. First, the court must initially find that "extraordinary and compelling reasons warrant such a reduction." *Id.* (citing § 3582(c)(1)(A)). Second, before granting a reduced sentence, the Court must find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1005. But district courts may skip this second step and have "full discretion to define 'extraordinary and compelling' without consulting the policy statement U.S.S.G. § 1B1.13" when an incarcerated person files the motion for compassionate release, because § 1B1.13 is not an "applicable" policy statement when an incarcerated person files the motion. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). Third and finally, even if the Court finds that extraordinary and compelling reasons exist, the Court may not grant a release before considering the sentencing factors set forth in § 3553(a). *Ruffin*, 978 F.3d at 1005. This last step gives the Court "substantial discretion" in deciding whether to reduce or modify a sentence. *Id.*

## III.

Defendant moves for compassionate release. Because Defendant is on home confinement as part of the BOP's reentry plan for him, he did not have a warden to whom he could submit a compassionate release request. Thus, Defendant wrote to two high level BOP officials. More than 30 days have passed since Defendant made those requests. Under these circumstances, the Government concedes—and the Court agrees—that Defendant has satisfied the statute's

administrative exhaustion requirement. (ECF No. 120 at 2.) The Court may therefore consider the merits of Defendant's motion.

Defendant argues that he presents extraordinary and compelling reasons. Because Defendant is under BOP supervision, he will likely lose the opportunity for a promotion to full-time delivery driver in August 2021, which he argues would hinder his reintegration after a lengthy prison sentence. Defendant asks to start his five-year term of supervision to "continue to work, grow and better his new chance at life and being a better man." (ECF No. 119 at 21.) Defendant also submits that the § 3553(a) factors favor release because Defendant has been rehabilitated, he is unlikely to recidivate, and he will be able to maintain employment. (*Id.* at 19–20.)

The Government opposes Defendant's motion on one ground: the Government reads Defendant's motion as being based on "rehabilitation alone." (ECF No. 120 at 3.) And the Government points out that, in considering a motion under § 3582(c)(1)(A), "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994. Thus, the Government argues that relief is prohibited under 28 U.S.C. § 994.

The Court does not read Defendant's motions as being based on rehabilitation alone. Rather, Defendant's motion is based on the unique circumstances in which he finds himself while on home confinement. Defendant has positioned himself for a promotion to full-time delivery driver at UPS. But, because he is under BOP supervision, Defendant will most likely be denied the opportunity to pursue his preferred full-time job so long as he remains under BOP supervision.

The undersigned is one of six judges serving on the Judiciary-BOP working group. Generally, the BOP is not staffed to personally supervise persons on home confinement. In contrast, the Probation Office in this district is staffed and tasked with supervision, particularly of people on home confinement. The Southern District of Ohio has an agreement with the BOP to

assist in the supervision of persons under BOP home confinement living within the district. It is thus understandable that the BOP does not ordinarily permit inmates on home confinement to work delivery jobs. If Defendant were under the supervision of the Probation Office—as would be the case if he started his term of supervised release—Defendant would have regular contact with a Probation Officer who would be in a better position make an individualized determination as to whether the full-time delivery job is an appropriate position for Defendant.

Defendant's unique circumstances are extraordinary and compelling. After obtaining two part-time jobs while on home confinement, keeping Defendant under BOP supervision now could stunt Defendant's reintegration by denying him the chance to obtain a full-time, well-paying position from one of his current employers. That result hurts both Defendant and society at large. Obtaining stable, gainful employment is one of the biggest hurdles for inmates reintegrating into society following long prison sentences.[3] The BOP kickstarted Defendant's reintegration by placing him on home confinement nine months ago. Keeping Defendant on home confinement while placing him under supervision of a Probation Officer (instead of the BOP) will increase the likelihood that Defendant can obtain a full-time promotion and continue working toward a positive post-incarceration future. That result helps both Defendant and society.

The § 3553(a) factors also warrant modifying Defendant's sentence to begin his five-year term of supervised release. Under § 3553(a), the Court first considers the nature and circumstances of the offense together with the history and characteristics of the Defendant. 18 U.S.C. § 3553(a)(1). The Court then considers:

"(2) the need for the sentence imposed—

---

[3] See Justin Stabley, *People leaving prison have a hard time getting jobs. The pandemic has made things worse*, PBS (Mar. 31, 2021), https://www.pbs.org/newshour/economy/people-leaving-prison-have-a-hard-time-getting-jobs-the-pandemic-has-made-things-worse.

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)  to afford adequate deterrence to criminal conduct;
>
> (C)  to protect the public from further crimes of the defendant; and
>
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"

18 U.S.C. § 3553(a)(2).

Defendant's criminal conduct in this case was egregious.  Defendant abused his position as a Zanesville police officer to set a up a deal for a kilogram of cocaine so that Defendant could use his authority to steal the cocaine at gunpoint and sell it.  (*See* ECF No. 58.)  The gravity of Defendant's abuse of authority and the dangerousness of his plan to commit robbery at gunpoint cannot be overstated.

At the same time, Defendant appears to be a changed person after 13 years of incarceration. By all accounts, Defendant is doing exceedingly well since being placed on home confinement as part of the BOP's reentry plan in October of 2020.  Defendant's case manager at the Alvis House has informed the Court that she has "rarely worked with a client as committed to their positive future as Mr. Beck."  (ECF No. 119 at 41.)  Defendant has attended each of his weekly case meetings and has had no incidents or violations while on home confinement.  (*Id.*)  Defendant's supervisors from his two jobs have also written to the Court in support of Defendant's character. (*Id.* at 42–43.)

Permitting Defendant to start his term of supervised release now—while remaining on home confinement—will also "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense[,]" and will adequately deter criminal conduct.  18 U.S.C. § 3553(a)(2).  The order does not in any way reduce his term of incarceration.  Furthermore,

putting Defendant in a better position to lead a successful return to society will reduce the likelihood of recidivism and therefore "protect the public from" any "further crimes of the defendant." *Id.* As discussed at length, Defendant has already been placed on home confinement by the BOP in October of 2020. Defendant is scheduled to finish his term of incarceration and start his five years of supervised release on May 6, 2022. The relief the Court grants today will keep Defendant on home confinement and electronic monitoring until May 6, 2022, but under the supervision of a Probation Officer. Thus, the Court modifies very little in the substance of Defendant's sentence. The Court's decision simply accelerates the start of his five-year term of supervised release for the purpose of placing Defendant under the supervision of a Probation Officer so that Defendant has a better chance of maintaining stable, gainful employment after his long term of incarceration.

## IV.

Accordingly, Defendant's motion for a sentence modification under 18 U.S.C. 3582(c)(1)(A) is **GRANTED**. (ECF No. 119.) Defendant shall immediately begin serving his originally imposed five-year term of supervised release. The Court imposes, as a new condition of supervised release, that Defendant shall participate in the Home Incarceration component of the location monitoring program until May 6, 2022 in the Southern District of Ohio. Defendant shall be required to remain in his residence unless given permission in advance by the Probation Officer for approved activities. Defendant shall be monitored by the use of location monitoring technology at the discretion of the Probation Officer. Furthermore, this decision does not grant Defendant permission to accept the offered promotion as a delivery driver. That decision is left for Defendant's assigned Probation Officer.

**IT IS SO ORDERED.**

**7/26/2021**                                     **s/Edmund A. Sargus, Jr.**
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**